UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TAYLOR MADISON,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY M. BLOUNT,<br><br>    Defendant. | Case No. 20-cv-11424<br><br>Sean F. Cox<br>United States District Court Judge |

**<u>OPINION AND ORDER GRANTING SANCTIONS</u>**

**I.**

The origins of this case date back to 2010, and the history has been well-summarized elsewhere. *See, e.g., Madison ex rel. Dickens v. AAA of Mich.*, No. 10-101514-NF, 2017 WL 11459401 (Wayne Cty. Cir. Ct., July 18, 2017). The parties have briefed the issues and the Court concludes that oral argument is not necessary. Thus, the Court orders that the motion will be decided without a hearing. *See* E.D. Mich. LR 7.1(f).

As this Court recalled in its last opinion:

> The Michigan Supreme Court requested a study of the 36th District Court and issued an order appointing Hon. Michael Talbot Judge of the Court of Appeals as Special Judicial Administrator of the court. One part of the study related to cases brought by attorney Michael Fortner, who had filed more than 100 cases in that court between 2010 and 2013. Talbot and Chief Judge Nancy M. Blount identified a need for assistance in designing and implementing an effective caseflow management plan for the newly created civil division. This restructuring included consolidating the 49 pending cases filed by Fortner and assigning them to a single docket. Ultimately, Judge Talbot assigned those pending cases to Judge Pamela Harwood. Harwood, who was a visiting judge, started her appointment on September 11, 2013. The Michigan Supreme Court ended Judge Talbot's appointment as a special judicial administrator for the 36th District Court on

> September 18, 2014. The state court administrative office extended Harwood's assignment as visiting judge periodically through December 31, 2017.

(ECF No. 24, PageID.1109–10 (citations and quotation marks omitted).)

Taylor Madison, who was a 10-year-old child struck by an automobile in 2004, filed a no-fault insurance suit in Michigan's 36th District Court. (ECF No. 24, PageID.1110.) Represented by attorney Michael Fortner, Madison obtained a jury verdict in the amount of $46,233 in 2011. (*Id.*) But the case did not end there:

> An appeal in Madison's case was held in abeyance while the Michigan Supreme Court considered a "virtually identical" case filed by Fortner. Ultimately, the state high court held that the district court was not divested of subject-matter jurisdiction. On remand, Madison's case was heard by Judge Harwood, who dismissed Madison's case in 2017. But the state circuit court reversed that opinion, and the state court of appeals affirmed. In July 2020 the case again returned to the 36th District Court, where it was assigned to Chief Judge William McConico.

(ECF No. 24, PageID.1110–11.)

Represented by attorney Dionne E. Webster-Cox, Madison filed a federal suit against Judge Blount and the 36th District Court on June 1, 2020.[1] Seeking damages of $2 million, she brought claims for alleged violations of 42 U.S.C. §§ 1981, 1983, and 1985 as well as a *Monell* claim. Madison alleged that Judge Blount "reassigned this case to Pamela Harwood (Caucasian), a non-36th District Judge, who was hand-picked by Defendant Blount." (ECF No. 24, PageID.1111.) Madison alleged that "Defendant Blount assigned only Taylor Madison's case to Judge Harwood" and that "Defendant Blount did *not* assign any Caucasian litigants to Harwood, only Taylor Madison." (*Id.*) Furthermore, she said she never received an order explaining the

---

[1] A similar suit, filed by Webster-Cox on behalf of Madison's state-court lawyer against Judge Blount, remains pending in front of another District Court judge. *See Fortner v. 36th District Court*, No. 20-11423 (E.D. Mich. filed June 1, 2020).

2

reassignment of her case to a new judge on remand. (*Id.*) Madison accused Judge Harwood of being Judge Blount's "hand-picked 'private judge.'" (*Id.*)

After holding a hearing, this Court proceeded Madison's federal case against Judge Blount.[2] First, the Court held that Madison's complaint failed to state a claim under 42 U.S.C. § 1981, which states that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts." (ECF No. 24, PageID.1112.) Madison never identified a contractual relationship or explained how she could sue a state actor under that law. (*Id.*) Next, the Court dismissed Madison's conspiracy claim under 42 U.S.C. § 1985, holding that the intracorporate conspiracy doctrine applied. (*Id.* (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019).)

Third, this Court dismissed the claim of racial discrimination under 42 U.S.C. § 1983: The complaint's "threadbare allegations [were] conclusory, speculative, and devoid of supporting facts" and "offer[ed] little more evidence of discrimination than the facts that she is Black and Judge Harwood is white." (ECF No. 24, PageID.1114.) In fact, "the public record indicate[d] that cases filed by Michael Fortner on behalf of dozens of other plaintiffs—not just hers—were reassigned to Judge Harwood." (ECF No. 24, PageID.1113.) And "Judge Harwood was not 'hand-picked' by Judge Blount; rather, Judge Talbot was the person who assigned the 49 pending cases to Judge Harwood." (*Id.*) So Madison failed to adequately plead disparate treatment compared to a similarly situated person of a different race. (*Id.*) The Court also held that *Monell v. Department*

---

[2] Madison and the 36th District Court had stipulated that the 36th District Court would be dismissed with prejudice from this action. (ECF No. 23.)

*of Social Services*, 436 U.S. 658 (1978), was inapplicable since Judge Blount was not an arm of the State of Michigan. (ECF No. 24, PageID.1114.)[3]

Finally, the Court considered Judge Blount's argument that Madison's claims were barred by judicial immunity. "'Although unfairness and injustice to a litigant may result on occasion,' a judge must be able to exercise his judicial authority 'without apprehension of personal consequences to himself.'" *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) (quoting *Mireles v. Waco*, 502 U.S. 9, 10 (1991)). Judges are immune from suits seeking damages as long as their actions were "judicial." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Courts must consider both "the nature of the act" and "the expectations of the parties." *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999).

The Court considered whether the nature of Judge Blount's acts were, indeed, "judicial." In her brief, Madison asserted that judicial immunity did not apply "because the allegations were not part of a court decision, but rather part of Defendant Blount's administrative duties as Chief Justice." The Court disagreed since "the assignment of cases is still a judicial function in the sense that it concerns the case deciding process." *Barrett v. Harrington*, 130 F.3d 246, 258 (6th Cir. 1997) (quoting *Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985)); *accord Cameron*, 38 F.3d at 272; *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994). (ECF No. 24, PageID.1115.) Based on the case law, Judge Blount was entitled to judicial immunity because she performed acts that were judicial in function.

At oral argument, Madison's co-counsel Robert Higbee (who filed his appearance on the day of the hearing) made a completely different argument from the one that was briefed. As the

---

[3] The Court did not make a holding regarding Judge Blount's alternative argument of res judicata.

4

transcript shows, he argued that Judge Blount should not be entitled to judicial immunity because she failed to follow state-court rules related to transferring cases:

> THE COURT: [C]ase reassignment, how is that not a function normally performed by a judge?
>
> MR. HIGBEE: I think what we're dealing with here is that in the normal course, and even in the *Coleman* case,[4] for example, you had a court issuing an order, and the Sixth Circuit says that's in the normal course of what a judge does. Here, we have a distinguishing factor where you have Judge Blount, who never issued an order to reassign this case, and the defendant relies upon [Mich. Ct. R.] 8.111(c) in support of its argument that this is a judicial function, and the problem is Judge Blount didn't follow that rule. She never issued an order reassigning this case. There's none attached to their motion.
>
> THE COURT: Do you dispute the fact that the case was reassigned or assigned to Judge Harwood—
>
> MR. HIGBEE: No, Your Honor.
>
> THE COURT: —by Judge Blount?
>
> MR. HIGBEE: We don't dispute that it—
>
> THE COURT: So again, answer my question. How is the reassignment of a case, in particular by a chief judge to another judge of that court, a visiting judge, not part of a function normally performed by a judge?
>
> MR. HIGBEE: Because the function normally performed by a judge would be done pursuant to an order stating a reason and served upon the parties, and that never happened in this case. So we don't think reassignment in the manner that it happened in this case is a function normally performed by a judge, Your Honor.
>
> THE COURT: So you're telling me you agree with the proposition that it's within the functions normally performed by a judge, from one judge, in particular the chief judge, to reassign a case to another judge of that court?

---

[4] *See Coleman v. Governor of Mich.*, 413 F. App'x 866, 873 (6th Cir. 2011) (holding that Michigan state-court judges were entitled to absolute judicial for enforcing a state statute requiring payment of certain court fees).

5

> MR. HIGBEE: Certainly agree that [Mich. Ct. R.] 8.111 vests the chief judge with that authority. We argue in this case that she did not act consistent at all with that authority and it was not done under that rule, Your Honor.

(ECF No. 33, PageID.1246–48.)

As this dialogue makes clear, co-counsel for Madison essentially conceded that a chief judge's reassignment of a case *is* a function normally performed by a judge. So the Court granted the motion to dismiss, reiterating that Judge Blount, even if she allegedly did not follow the state-court rule regarding reassignment, was immune from suit. (ECF No. 24, PageID.1116 n.1).[5]

## II.

### A.

Judge Blount filed this Rule 11 motion on May 10, 2021. (ECF No. 26.) First, she argues that Madison's claims were legally frivolous. (ECF No. 26, PageID.1127.) Second, Judge Blount claims that Madison's counsel filed the suit with the purpose of harassing her. (*Id.* at PageID.1129.) Finally, she asks the Court to impose a "significant monetary sanction" on Madison's counsel as a deterrent. (*Id.* at 1131.)

Madison's response brief argues that the claims were "filed in good faith and with a proper purpose." (ECF No. 30, PageID.1220.) Madison also contends that Judge Blount's Rule 11 motion violated the safe-harbor provision of Rule 11(c)(2). (*Id.* at PageID.1222.)

Rule 11 sanctions may be merited if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*,

---

[5] Madison has appealed to the Sixth Circuit. (ECF No. 27.)

6

613 F.3d 609, 626 (6th Cir. 2010) (quoting *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988)). Furthermore, such sanctions are appropriate "when an attorney refuses to dismiss a claim after becoming aware that it lacks merit." *Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509, 528 (6th Cir. 2013). The Court must ask whether "the attorney's conduct was unreasonable under the circumstances." *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 833 (6th Cir. 2005).

## B.

For the reasons that follow, the Court holds that Rule 11 sanctions are appropriate in this case. Plainly, Madison's suit was "presented for [an] improper purpose, such as to harass" Judge Blount." Fed. R. Civ. P. 11(b)(1). Her counsel's "claims, defenses, and other legal contentions" were not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

Start with Madison's failure to state a claim under 42 U.S.C. § 1981. Madison never identified a contractual relationship that would allow this case to fall under § 1981. And, as Judge Blount's motion to dismiss indicated, the case law is clear that individuals may not use that mechanism to sue state actors such as judges. Madison never responded to that argument—but nor did she withdraw the claim. By contrast, in the similar case filed by Webster-Cox's client against Judge Blount, the plaintiff withdrew the § 1981 claims. (No. 20-11423, ECF 21, PageID.1379.) The claim was not warranted by existing law.

The 42 U.S.C. § 1985 claim fared no better. Judge Blount's motion stated that this claim should be dismissed based on the clear case law; Madison never responded or withdrew the claim. The Court dismissed that cause of action under the intracorporate conspiracy doctrine. The claim was not warranted by existing law.

7

The 42 U.S.C. § 1983 was particularly inflammatory and lacking in merit. To repeat, Madison accused Judge Blount of racial discrimination despite presenting only conclusory allegations. Her complaint said that Judge Blount reassigned her case, and no cases involving white people, to Judge Harwood because of her race. But Judge Harwood received dozens of reassigned cases that had been filed by Fortner; nowhere did Madison document that there was a racist assignment process or even list the races of the other plaintiffs. The claim was not warranted by existing law.

The major remaining question concerns judicial immunity. In the response to the motion for sanctions, Madison's counsel argue that "Plaintiff was not given a reasonable opportunity for further investigation or discovery in this matter." (ECF No. 30, PageID.1219.) Moreover, the brief asserts that "there are still factual and legal disputes that remain unresolved." (*Id.* at PageID.1220.) They continue that this case presented "novel claims" about judicial immunity (*Id.* at PageID.1221.)

After reviewing the pleadings and the transcript, the Court sincerely questions the candor of Madison's counsel. Madison's counsel do not explain what "further investigation or discovery" would have assisted the straightforward application of an immunity doctrine. These are not "novel claims." Nor do counsel identify what "factual and legal disputes" need to be resolved.

Rather, the transcript excerpted above summarizes the tactics of Madison's counsel in this case: allege incendiary harassment and multiple causes of action, then ignore the counterarguments and try something new. To start, Madison's response brief argued that Judge Blount was not immune from suit because she acted as administrator rather than a judge. But then, Madison's new counsel told the Court something completely different at oral argument, without disclaiming the

8

legally baseless claim from the brief. For the first time, counsel mentioned Michigan Court Rule 8.111.[6] Counsel alleged that Judge Blount did not issue a written order, thus violating this state-court rule. When the Court pressed counsel about this new argument, counsel said he "agree[d]" that the rule "vests the chief judge," Judge Blount, with the authority to reassign cases. But, he added, Judge Blount "did not act consistent at all with that authority."

Of course, the law is clear that "the assignment of cases is still a judicial function in the sense that it concerns the case deciding process." *Barrett*, 130 F.3d at 258. It is hard to dispute that the allegation here concerned a judicial act. "If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" *Mireles*, 502 U.S. at 12–13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). So the case law on judicial immunity contradicts Madison's argument on the brief as well as the brand-new claim at oral argument.

---

[6]     (C) Reassignment.

(1) If a judge is disqualified or for other good cause cannot undertake an assigned case, the chief judge may reassign it to another judge by a written order stating the reason. To the extent feasible, the alternate judge should be selected by lot. The chief judge shall file the order with the trial court clerk and have the clerk notify the attorneys of record. The chief judge may also designate a judge to act temporarily until a case is reassigned or during a temporary absence of a judge to whom a case has been assigned.

(2) If a judge is reassigned under a concurrent jurisdiction plan or a family court plan, the successor judge will be assigned all cases filed after the date of reassignment, any pending matters, and postjudgment matters that relate to disposed cases. The chief judge shall submit a local administrative order under MCR 8.112 identifying the revised caseload distribution.

To be sure, bringing a case that ultimately is dismissed does not necessarily justify the imposition of sanctions against counsel. Rule 11 requires more. Sanctions under the rule necessitate a finding of an improper purpose or unwarranted legal arguments, both of which exist here.[7]

First, the legal claims are not warranted by existing law. As documented above, the inflammatory claims of racial discrimination were nothing but threadbare allegations that failed to amount to a federal civil rights suit. Madison did not even attempt to articulate a contractual relationship or identify a non-state actor under § 1981, she failed to state a *Monell* claim, she failed to respond when apprised of the intracorporate conspiracy bar to a § 1985 claim, and she did not make out a § 1983 claim. Counsel could have withdrawn those claims, but they instead ignored the deficiencies. Perhaps most glaringly, Madison's counsel abandoned one argument against judicial immunity and substituted another argument that quite obviously undermined the case. As another judge aptly stated, "Plaintiff's counsel adopted the ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist. This runs directly counter to the obligation imposed upon an attorney under Rule 11(b)(2)." *Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 454 (E.D. Mich. 2006) (internal citations and quotation marks omitted).

Second, the Court finds that the purpose of this suit was improper, i.e., for the purpose of harassing Judge Blount. This case dates back an entire decade. Madison originally won damages

---

[7] Madison's counsel direct the Court to the standard for sanctions under 28 U.S.C. § 1927, *see Teno v. Iwanski*, 464 F. Supp. 3d 924, 953 (E.D. Tenn. 2020) (citing *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 754 (6th Cir. 2010)), but that is separate from (albeit related to) sanctions under Rule 11.

at a jury trial, but the case remained in appellate limbo for years. Judge Blount was the chief judge when the case returned to the lower court, the case was assigned to Judge Harwood; Judge Harwood dismissed Madison's case, but Madison ultimately won on appeal. With Webster-Cox as counsel, both Fortner and Madison decided to sue Judge Blount for money damages—undeterred by the maxim that among "the proper procedures for a litigant wishing to challenge a judge's rulings[,] [s]uing the judge is not one of them." *Coleman v. Roberts*, No. 19-13448, 2019 WL 6617977, at *2 (E.D. Mich. Dec. 5, 2019). If the futility of the lawsuit was not initially obvious to Madison's counsel, a reasonable attorney would have realized such after reading all the pleadings. The fact that counsel ignored most of those arguments and then invented an entirely new argument at oral argument further supports the conclusion regarding a harassing motive.

This Court has found it appropriate to sanction counsel when an attorney files actions that are clearly barred on the merits and by absolute judicial immunity. *See J. Edward Kloian Found. v. Findling*, No. 13-13684, 2013 WL 6859143, at *8 (E.D. Mich. Dec. 30, 2013). This case meets the Rule 11 standard.

## C.

Still, Madison contends that Judge Blount's motion for sanctions violated the safe-harbor provision of Rule 11(c)(2). This claim is unfounded.

"Rule 11 imposes on attorneys a duty to reasonably investigate factual allegations and legal contentions before presenting them to the court. . . . But, the drafters of Rule 11 also included the safe-harbor provision to allow the nonmovant a reasonable period to reconsider the legal and factual basis for his contentions and, if necessary, to withdraw the offending document." *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 766–67 (6th Cir. 2014). The rule states:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed R. Civ. P. 11(c)(2).

On November 12, 2020, Judge Blount served a motion for Rule 11 sanctions on counsel for Madison. (ECF No. 26-3.) This six-paragraph motion also included the motion to dismiss that defendants had filed two days earlier. (*Id.*) This document asserted that the suit was "barred by judicial immunity, res judicata, and otherwise fail to state a claim upon which relief can be granted." (*Id.* at PageID.1162.) Furthermore, it sought sanctions because the suit was filed "for the sole purpose of harassing Defendant Blount and is without a basis supported by existing law." (*Id.* at PageID.1163.) When Judge Blount filed her motion for sanctions with the Court on May 10, she extended this brief to ten pages plus attachments. (ECF No. 26.)

Regarding the safe-harbor provision, Madison makes three arguments.

First, she says that Judge Blount "failed to provide any substantive violation of Rule 11(b)" in her November 12 motion. (ECF No. 30, PageID.1223.) That is untrue. Rule 11(b) explicitly lists claims that are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" as potential grounds for sanctions. That is exactly what Judge Blount identified when she noted the suit was barred by judicial immunity, res judicata, and failure to state a claim upon which relief can be granted. In other words, the motion said, Madison's representations to the Court were not warranted by existing law or a nonfrivolous argument. That allegation directly implicates Rule 11(b).

12

Second, Madison says that Judge Blount did not meet the safe-harbor requirements because she "did not serve an accompanying brief." (ECF No. 30, PageID.1223.) Again, this is incorrect. Judge Blount served Madison with a six-paragraph brief as well as an attached motion to dismiss. True, Judge Blount later expanded her brief with more details after the Court granted the motion to dismiss. But that is not a violation of the rule. Madison does not even attempt to show case law requiring a formal brief attached to the motion for sanctions. By contrast, Judge Blount persuasively demonstrates that no such brief is necessary and that the shorter motion was sufficient. *See, e.g.*, *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 338–40 (N.D. Iowa 2007); *cf. Penn, LLC*, 773 F.3d at 767 (holding that an informal letter that was not properly served is insufficient for Rule 11's safe-harbor provision).[8]

Finally, Madison claims that Judge Blount erred by "failing to provide Plaintiff with the modified brief at least 21 days prior to filing." (ECF No. 30, PageID.1224.) Again, the case law undermines this argument. *See Star Mark*, 682 F.3d at 177 (holding that a party complied with Rule 11 because "gave notice that it would be seeking sanctions under Rule 11 and identified six reasons why it believed Rule 11 had been violated"). "The purpose of the [safe-harbor] provision is not to cause the party opposing a frivolous filing to incur costs merely to have the filing withdrawn, but to give the opponent notice and an opportunity to consider withdrawing the filing

---

[8] The Court similarly finds unconvincing Madison's argument that Judge Blount violated the local rules. "Unless the Court permits otherwise, each motion and response to a motion must be accompanied by a single brief." E.D. Mich. L. R. 7.1(d)(1)(A). The motion for sanctions filed with the Court on May 10 undoubtedly was accompanied by a brief.

without the court's involvement." *Id.* Madison had such notice and opportunity as early as November 12, 2020, which satisfies the 21-day requirement.

### III.

"A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed R. Civ. P. 11(c)(4). This Court has broad discretion in determining the appropriate amount of the sanction award. *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009).

Counsel for Judge Blount seek the entirety of their attorney fees: $26,600. Judge Blount was represented by Thomas Kienbaum and David Porter of Kienbaum Hardy Viviano Pelton & Forrest, P.L.C. Kienbaum, who is a founding member of that firm, has practiced law since 1968 and has handled hundreds of litigation matters. (ECF No. 26-2.) Porter is an associate attorney with eight years of experience. (*Id.*) According to a declaration filed with the Court, the two attorneys for Judge Blount billed at a blended rate of $350 per hour—an amount between Porter's standard billing rate of $275 per hour and Kienbaum's standard rate of $500 per hour—for a total of 76 hours. (*Id.*) This included 53.9 hours of initial research into the case, legal research, and drafting the motion to dismiss ($18,865); 13 hours of drafting the reply brief ($4,550); and 9.1 hours of preparing for oral argument, attending oral argument, and reviewing the Court's opinion granting the motion to dismiss ($3,185). (*Id.*)

This Court does not find the hourly rate or the amount of hours billed by Defense Counsel in this action to be unreasonable. The median hourly billing rate in the field of Labor and Employment is precisely $275 (the non-blended fee of David Porter), according to the 2020 Economics of Law Practice Attorney Income and Billing Rate Summary Report published by the

14

State Bar of Michigan. (ECF No. 26-2.) Furthermore, the 95th percentile is $500, which is the non-blended fee of Thomas Kienbaum (one of the most experienced employment lawyers in Southeastern Michigan). A blended fee of $350 per hour is below the 75th percentile ($375 per hour). Given the field of practice and years of experience of the two Defense Counsel, this rate is reasonable. The Court also does not find it unreasonable to bill 76 hours to research and prepare this case, draft a motion to dismiss, draft a reply brief, prepare for oral argument, and argue the case.

Having carefully considered all of the relevant circumstances presented here, the Court concludes that a monetary sanction in the amount of $26,600 is sufficient to deter repetition of the conduct at issue here. The Court will hold Plaintiffs' Counsel jointly and severally liable for Judge Blount's attorneys' fees. *See* Fed. R. Civ. P. 11(c)(1). ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.")

Accordingly,

IT IS ORDERED that Judge Blount's Motion for Sanctions is GRANTED;

IT IS FURTHER ORDERED that Plaintiffs' Counsel shall jointly and severally pay attorneys' fees to Judge Blount within SIXTY DAYS in the amount of $26,600.

SO ORDERED.

Dated: August 3, 2021                 s/Sean F. Cox
                                              Sean F. Cox
                                              U. S. District Judge